**HOUSING AUTHORITY OF the CITY OF YORK, Appellant,**

v.

**Ernest DICKERSON and Glenie M. Dickerson.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1998.

Decided July 13, 1998.

Bradley J. Leber, York, for appellant.

E. John Mitton, Jr., York, for appellees.

Before PELLEGRINI and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

The Housing Authority of the City of York (Authority or simply "HA") appeals from an order of the Court of Common Pleas of York County, which reversed the Authority's decision to terminate federally subsidized housing benefits [1] to appellees, Ernest and Glenie Dickerson. For the reasons stated below, we reverse.

On August 13, 1996, appellees, who reside in the City of York, entered into a Section 8 Housing Assistance Payments Agreement with the Authority, entitling them to subsidy payments in accordance with the Department of Housing and Urban Development (HUD) Section 8 rules and regulations. Pursuant to federal regulations, appellees reported, via a personal declaration statement signed on August 13, 1996, that their minor grandson, who resided with them, had been arrested for robbery and burglary on June 28, 1996. Af-

---

1. Housing is subsidized by the federal government under Section 8 of the United States Housing Act (Section 8), *as amended,* 42 U.S.C. § 1437f.

ter reviewing appellees' personal declaration statement, the HA sent written notification to appellees on August 26, 1996, stating that it intended to terminate their Section 8 certificate due to their grandson's participation in violent criminal activity. Under federal regulations, Section 8 benefits can be terminated if the preponderance of evidence indicates that a family member has engaged in drug-related or violent criminal activity. 24 C.F.R. §§ 982.552(b)(4), 982.553(a)(2) and 982.553(c) (1995). There is no dispute that appellees' grandson had committed violent criminal activity within the meaning of the regulation.

Appellees requested, and were granted, an informal hearing before the executive director for the HA on September 23, 1996. After this hearing, the Authority affirmed its original decision to terminate appellees' Section 8 benefits. Appellees appealed to the trial court, which reversed the HA's decision, reinstated the Section 8 Certificate and remanded the matter to the Authority for consideration of the mitigating factors cited at 24 C.F.R. § 982.552(c). The trial court reasoned that it was bound by our recent decision in *Housing Authority of the City of York v. Ismond,* 700 A.2d 559 (Pa.Cmwlth. 1997), *appeal granted, in part,* 550 Pa. 467, 706 A.2d 1206 (1998), in which we held that the predecessor regulation, 24 C.F.R. § 882.216(c)(2), required the HA to consider all mitigating factors prior to making the decision to terminate assistance.

On appeal, the HA argues that the trial court erred in reversing its decision because consideration of "all of the circumstances of each case" is discretionary, not mandatory under the language of the regulation.[2] It asserts that the plain language of 24 C.F.R. § 982.552(c)(1) supports the conclusion that the regulation permits housing authorities to exercise reasonable discretion in determining which circumstances or factors to consider in any particular case. The HA claims that it reasonably exercised this discretion in pro-

mulgating its internal rule, identified as "Section 8 Drug and Violent Criminal Activity Policy," under which it considers mitigating circumstances. This internal policy, however, only applies when the offender is an adult who is not the head of the household or his or her spouse/co-tenant. When the offender is a minor, these mitigating circumstances do not apply.[3]

Essentially, these are the same arguments rejected in *Ismond,* in which we held that the HA's internal policy effectively precludes it from considering "all of the circumstances in each case" and, therefore, violates the federal regulations. Nonetheless the HA argues that it is not bound by *Ismond* because that case involved an interpretation of 24 C.F.R. § 882.216(c)(2), a predecessor regulation, which was amended when 24 C.F.R. § 982.552(c)(1) was enacted.

■ It is a fundamental rule of statutory construction that a change of language in subsequent statutes on the same matter indicates a change of legislative intent. *Haughey v. Dillon,* 379 Pa. 1, 6, 108 A.2d 69, 72 (1954); *Georgia–Pacific Corp. v. Unemployment Compensation Bd. of Review,* 157 Pa. Cmwlth. 651, 630 A.2d 948, 960 n. 22 (1993); *Nemitz v. Air Services Int'l,* 7 Pa.Cmwlth. 373, 298 A.2d 654, 657 (1972). Similarly, to the extent that HUD has modified the language of its regulation, we are not bound by the *Ismond* court's interpretation.

■ While the language of the cited sections was not dramatically altered, two things persuade us to credit the Authority's arguments under the new regulations. First, as was noted in the regulatory commentary, under the new rule, "For most purposes, the HA may adopt and revise HA policies without asking for HUD approval.... [T]he new rule substantially increases the HA's day-to-day autonomy in administration of the program, and minimizes HUD interference in HA policy decisions [while retaining] the authority for necessary oversight and audit of

---

**2.** "In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the HA has discretion to consider all of the circumstances in each case...." 24 C.F.R. § 982.552(c)(1) (1995).

**3.** The HA's rationale behind this policy is that adults have a duty to provide proper supervision to their minor household members. Thus, the policy will make parents responsible for the behavior of their children.

HA operations." 60 Fed.Reg. 34661 (1995). Thus, the *Ismond* court's concern that the Authority's internal policy conflicted in spirit with HUD's intentions is of less moment since under the new regulation HUD has ceded much broader policymaking authority to the HA. Even more persuasive is the specific language of the revised commentary found in the Federal Register. Much of the language relied upon in *Ismond*[4] does not appear in the new comments, including the proviso that "conviction for the proscribed activities ... should not be the only factor considered."[5] Moreover, added to the commentary accompanying the new regulation we find, *inter alia:*

> The rule gives the HA discretion to terminate assistance for criminal activity. However the rule does not direct the HA to terminate assistance in any particular case. The HA has therefore the power to adopt and implement local policies, and to decide the application of local policies to particular cases....
>
> ....
>
> ... The HA may also properly consider the broader effects of HA action or nonaction on the program and community, including:
>
> —How termination of assistance for criminal activity by assisted families may affect or discourage criminal activity in the community.....
>
> ....
>
> Comments [from the public in response to publication of the proposed rule] suggest that HUD should not merely allow the HA to consider "all" circumstances of each case, but should require that the HA consider all the circumstances. *This comment is not adopted.* In this rule, HUD does not enumerate or prescribe all the factors that can or should be considered by the HA. Rather, the rule confirms that the

HA has ample discretion to consider the factors of a particular case. *Given this discretion, the HA should have flexibility to make a practical determination and consideration in particular cases. The HA exercise of discretion should not be paralyzed, and opened to challenge by mandating consideration of "all" circumstances in "all" cases.*

60 Fed.Reg. 34689 (1995)(emphasis added). Our reading of this commentary is that HUD's interpretation of its own regulations, at least as they were amended, is inconsistent with our interpretation of the former regulations in *Ismond.* Giving due weight to HUD's interpretation of its own regulations, and to the latitude which the new regulation accords housing authorities to set and implement local policies, we conclude that the Authority was acting within its discretion when it terminated appellees' benefits.

Accordingly, we reverse the order of the trial court.

### *ORDER*

AND NOW, this 13th day of July, 1998, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby reversed.

---

4. See 700 A.2d at 562, quoting 55 Fed.Reg. 28540–41 (1990).

5. In this regard, appellees correctly point out that the new commentary notes, "The issues considered by HUD in adoption of the prior rule are discussed at length in the preamble to that publication. In particular, the preamble discusses a number of the issues again raised by comments

on the present rule. Points discussed in that preamble may not be repeated here." 60 Fed. Reg. 34688 (1995). We do not find it without significance, however, that HUD chose to reiterate and emphasize certain comments while deleting others, particularly where, as with certain comments quoted in the text, the deleted language is directly inconsistent with added language.