### ALLEGHENY COUNTY HOUSING AUTHORITY, Appellant,

v.

### Cheryl LIDDELL, Appellee.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided Dec. 23, 1998.

---

14. WCJ Decision, March 12, 1997, Finding of Fact No. 8, at 5, 6, R.R. at 11a, 12a.

15. Finding of Fact No. 8.

John W. Joyce, Pittsburgh, for appellant.

No appearance entered for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Allegheny County Housing Authority (Authority) appeals from the October 15, 1997 order of the Court of Common Pleas of Allegheny County (trial court) denying the Authority's post-trial motion and entering judgment in favor of Cheryl Liddell (Liddell). The Authority had attempted to terminate Liddell's federally subsidized housing benefits due to the drug-related activities of someone residing in her apartment unit.[1] For the following reasons, we reverse.

Liddell is a tenant in an apartment at the Hays Manor public housing development in McKees Rocks, Pennsylvania. Ernest Gary was a frequent visitor to her unit and maintained it as his residential address. After Mr. Gary's November 11, 1995 arrest for drug-related crimes, the Authority served Liddell with notice of lease termination on January 16, 1996.[2] On May 22, 1996, a district justice entered judgment in favor of the Authority. On appeal, a Board of Arbitrators in the Court of Common Pleas of Allegheny County found in favor of Liddell. The Authority appealed from the award, waiving a jury trial.

The Authority filed a June 25, 1996 complaint in the common pleas court against

---

1. Housing is subsidized by the federal government under Section 8 of the United States Housing Act, *as amended,* 42 U.S.C. §1437f.

2. It is not clear from the record why Liddell did not avail herself of the Authority's grievance procedure (R.R. 30–33a) and this matter proceeded directly to a district justice.

Liddell for possession of her unit based on a violation of Section IX(J) of the residential lease agreement. That section provides as follows:

J. To assure that the tenant, any member of the household, a guest, or anther person under the tenant's control, shall not engage in:

1. Any criminal activity that threatens the health, safety or right to peaceful enjoying of the PHA's [housing authority] public housing premises by other residents or employees of the PHA;

2. Any drug-related criminal activity on or near such premises. Any criminal or drug activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the dwelling unit.

(R.R. 19–20a.)

Following a non-jury trial, the trial court entered an April 15, 1997 verdict in favor of Liddell:

It is hereby ORDERED that Ernest Gary is prohibited from visiting or staying at the unit in possession of Defendant Cheryl Liddell. In the event there is any violation of this Order, Plaintiff Allegheny County Housing Authority may petition this court to proceed with an immediate eviction of Defendant Cheryl Liddell from the premises.

(R.R. 55a.)

On May 5, 1997, the Authority filed a post-trial motion therein arguing that the trial court erred in failing to consider all of the evidence that it presented. Specifically, the Authority contended that it established by credible testimony that Mr. Gary was a member of Liddell's household, that he was arrested on the grounds of the Hays Manor housing development for possession of five rocks of crack cocaine and that he provided Liddell's address in conjunction with his individual application for housing from the Authority. Thus, the Authority maintained that the trial court erred in failing to grant the relief requested in its complaint for possession.

The trial court denied the Authority's post-trial motion and entered judgment in favor of

Liddell. The Authority's appeal to this Court followed.

■ The Authority presents three issues for our review: (1) whether the trial court erroneously substituted its discretion for that of the Authority; (2) whether the Authority failed to exercise discretion and consider "mitigating" factors; and (3) whether the Authority's application of the "One Strike and You're Out" policy is manifestly unjust and clearly opposite of the provisions of applicable Department of Housing and Urban Development (HUD) regulations. We are limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Zajac v. Altoona Hous. Auth.*, 156 Pa.Cmwlth. 209, 626 A.2d 1271 (Pa.Cmwlth. 1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994).

## Trial Court's Substitution of Discretion

The Authority contends that the trial court erroneously substituted its discretion for that of the Authority by deciding that the better course of action was to evict only the offending resident as opposed to all members of the household. The Authority acknowledges that judicial review over agency actions is not precluded, but points out that its action in this instance is committed to agency discretion by law.

(5) Eviction for criminal activity—(i) PHA discretion to consider circumstances. In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit. A PHA may require a family member who has engaged in the illegal use of drugs to present evidence of successful completion of a treat-

ment program as a condition to being allowed to reside in the unit.

24 C.F.R. §966.4(*l*)(5)(i).

In addition, the Authority notes that, when agency action is committed to agency discretion by law, a court's review of the agency's action is well defined. Specifically,

> courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion.

*Blumenschein v. Housing Auth. of Pittsburgh*, 379 Pa. 566, 573, 109 A.2d 331, 335 (1954), *appeal dismissed*, 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955) (emphasis in original). *See also Bowman v. Department of Environmental Resources*, 549 Pa. 65, 700 A.2d 427 (1997).

Liddell contends that the statutes, regulations and legislative history relevant to evictions of tenants and their families for involvement in drug-related criminal activity provide specific guidance as to when and how the Authority should use its discretion in deciding to evict innocent tenants. Thus, she argues that, given the fact that the Authority in her case coercively used its power to evict an innocent tenant and her child, the Author-

ity's action was judicially reviewable by the trial court.

█ The trial court in its opinion noted that Liddell has been a problem-free resident, has limited income, could not afford to procure suitable alternative housing if evicted and did not participate in the drug-related activity. Accordingly, it inquired into the wisdom of the Authority's decision to evict the whole household, as opposed to just the offending member, and rendered its non-jury verdict. In light of the court's pro-active approach, we agree with the Authority that the trial court exceeded its authority and improperly substituted its judgment for that of the Authority.

### Authority's Failure to Exercise Discretion and Consider Mitigating Factors

The Authority argues that the trial court did not find that the Authority abused its discretion in deciding to evict Liddell, but instead found that the Authority failed to exercise its discretion in any way. In addition, the Authority contends that at no time did Liddell ever raise an issue as to the Authority's alleged failure to exercise discretion and that the trial court erred in addressing the issue sua sponte.[3]

We acknowledge that Liddell did not specifically raise an issue as to the Authority's failure to exercise discretion when considering whether to evict an entire household based on the drug-related activity of one of its members. We note, however, that representing herself at the January 15, 1997 arbitration appeal before the trial court, Liddell did state on the record that she did not know that her cousin Mr. Gary was involved with drugs, that she is not involved with drugs and that she advised her son as to the Authority's policy that drug involvement can lead to eviction.[4] Considering the fact that we already decided that the trial court erro-

---

3. Because two cases before the trial court had similar facts, Hibbler and Liddell, the trial court wrote a combined opinion. The Authority contends that its failure to exercise discretion was raised in Hibbler, but not in Liddell.

4. In addition, we note that in Liddell's notice of intention to appear at the arbitration hearing,

she stated that she owed nothing on the Authority's claim "[b]ecause I did nothing wrong myself. I was just helping a close family friend out while he was waiting on his apartment.... I lived here for six years and have never been in trouble with the law." (R.R. 47a.)

neously substituted its discretion for that of the Authority, we will briefly address the current state of the law with regard to the Authority's obligation to exercise discretion in these matters.

The trial court in its opinion characterized the sole issue as whether the Authority must exercise discretion when considering whether to evict an entire household based on the drug-related criminal activity of one of its members. For the following reasons, we disagree with the trial court's analysis and determination that the Authority had to exercise discretion and consider mitigating factors.

Noting our decision in *Housing Auth. of the City of York v. Ismond*, 700 A.2d 559 (Pa.Cmwlth.1997), *appeal granted, in part*, 550 Pa. 467, 706 A.2d 1206 (1998), the trial court determined that "[t]he Housing Authority [in Liddell's case] failed to exercise discretion and consider any mitigating factors, but instead chose to implement its zero tolerance "One Strike" policy whereby eviction proceedings are instituted in the event of drug related activity of *any* household member. Such a policy is manifestly unjust and clearly opposite to the provisions of the applicable HUD regulations." (Trial Court's December 22, 1997 Opinion at 4) (emphasis in original).[5]

*Ismond* involved a housing authority's decision to terminate the participant's benefits due to her juvenile son's drug-related criminal activity. We affirmed the trial court's order finding that the housing authority, under 24 C.F.R. §882.216(c)(2), is required to consider all mitigating factors prior to making the decision to terminate assistance. On March 12, 1998, the Supreme Court granted the petition for allowance of appeal, but limited the appeal to the issue of whether the Commonwealth Court erred when we held that petitioner was required to consider all the mitigating factors under Section 882.216(c)(2).

On July 13, 1998, this Court decided *Housing Auth. of York v. Dickerson*, 715 A.2d 525 (Pa.Cmwlth.1998). Therein, the trial court reversed the housing authority's decision to terminate the participants' federally subsidized housing benefits due to their resident grandson's participation in violent criminal activity. We reversed the trial court's order and concluded that the authority was acting within its discretion when it terminated the participants' benefits.

We noted in *Dickerson* that *Ismond* involved predecessor regulation 24 C.F.R. §882.216(c)(2),[6] amended by 24 C.F.R. §982.552(c)(1).[7] We stated that, to the extent that HUD modified the language of its regulation, we were not bound by the *Ismond* court's interpretation. In addition, we noted that the revised commentary to the new regulation includes the following language:

> not reside in the unit. A [housing authority] may require a Family members that has engaged in the illegal use of drugs to submit evidence of successful completion of a treatment program as a condition to being allowed to reside in the unit.
>
> 24 C.F.R. §882.216(c)(2).

---

5. Although the opinion is dated December 22, 1996, this is clearly a typographical error as the opinion in the original record is time-stamped January 2, 1998.

6. The predecessor regulation at issue in *Ismond* provided, in pertinent part, as follows:

> In determining whether to deny or terminate assistance based on drug-related criminal activity or violent criminal activity:
>
> . . . .
>
> (2) a [housing authority] shall have discretion to consider all of the circumstances in each case, including the seriousness of the offense, the extent of participation by Family members, and the effect that denial or termination would have on Family members not involved in the proscribed activity. [A housing authority], in appropriate cases, may permit the remaining members of the Family to continue receiving assistance and may impose a condition that Family members determined to have engaged in the proscribed activities will

7. The amended regulation at issue in *Dickerson* provides as follows:

> (c) HA discretion to consider circumstances.—(1) In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the HA has discretion to consider all of the circumstances in each case, including the seriousness of the case, the extent of participation or culpability of individual family members, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.
>
> 24 C.F.R. §982.552(c)(1).

Comments [from the public in response to publication of the proposed rule] suggest that HUD should not merely allow the HA to consider "all" circumstances of each case, but should require that HA consider all the circumstances. *This comment is not adopted.* In this rule, HUD does not enumerate or prescribe all the factors that can or should be considered by the HA. Rather, the rule confirms that the HA has ample discretion to consider the factors of a particular case. *Given this discretion, the HA should have flexibility to make a practical determination and consideration in particular cases. The HA exercise of discretion should not be paralyzed, and opened to challenge by mandating consideration of "all" circumstances in "all" cases.*

*Dickerson,* 715 A.2d at 527 (emphasis in original).

■ Accordingly, we reject the trial court's conclusion that the Authority was bound to exercise its discretion and consider mitigating factors. Consideration of "all of the circumstances of each case" is discretionary and not mandatory under the language of the applicable regulations. *Id.*

### "One Strike and You're Out" Policy

The Authority notes that this policy originated in a March 23, 1996 executive order issued by President Clinton and that the Authority adopted it on July 8, 1996. It argues that the trial court erred in concluding that the policy was manifestly unjust and clearly opposite to the provisions of the applicable HUD regulations. The Authority further contends that its eviction proceedings were based on a lease violation committed by a household member and not the policy itself.

Liddell contends that the Authority did invoke its "One Strike and You're Out" policy when attempting to evict Liddell and her son and that, had it followed its own regulations, it would have considered the mitigating circumstances referenced by the trial court. Liddell maintains that the "One Strike and

You're Out" policy is analogous to the internal policy struck down in the *Ismond* case.

In *Dickerson,* we noted that "the *Ismond* court's concern that the Authority's internal policy [to terminate solely on the basis that a juvenile family member was a drug offender] conflicted in spirit with HUD's intentions is of less moment since under the new regulation HUD has ceded much broader policy-making authority to the HA." *Dickerson,* 715 A.2d at 527. In addition, we noted the specific language of the revised commentary to the new regulation.

The rule gives the HA discretion to terminate assistance for criminal activity. However the rule does not direct the HA to terminate assistance in any particular case. The HA has therefore the power to adopt and implement local policies, and to decide the application of local policies to particular cases....

....

... The HA may also properly consider the broader effects of HA action or non-action on the program and community, including:

—How termination of assistance for criminal activity by assisted families may affect or discourage criminal activity in the community....

*Id.*

In paragraph 5(b) of its July 25, 1996 complaint for possession of the premises, the Authority cites a breach of the conditions of the residential lease as grounds for its forfeiture action. (R.R. 12a.) At the January 15, 1997 non-jury trial before the trial court, Hays Manor site manager Mr. Totten testified that he served Liddell with a notice of lease termination for "serious material violations of the lease." (R.R. 73a.) Even if the Authority was proceeding under an internal policy of "One Strike and You're Out," however, that would not necessarily mean that it had manifestly abused its discretion.[8] *See Dickerson,* 715 A.2d at 527.

Accordingly, for the above reasons, we reverse the trial court's order.

---

**8.** We note that "Arresting Officer Richard Szurlej testified that Mr. Gary pleaded guilty to possession of crack cocaine in front of Judge Cercone downtown." (January 15, 1997 Hearing, N.T. 15; R.R. 83a.) Thus, more than an arrest for drug-related activity was at issue.

### *ORDER*

AND NOW, this 23rd day of December, 1998, we hereby reverse the October 15, 1997 order of the Court of Common Pleas of Allegheny County.