**ALLEGHENY COUNTY HOUSING
AUTHORITY, Appellant,**

v.

**Janice HIBBLER.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1999.
Decided Jan. 13, 2000.
Publication Ordered April 11, 2000.

John W. Joyce, Pittsburgh, for appellant.

Richard Matesic, Pittsburgh, for appellee.

Before McGINLEY, J., KELLEY, J., and McCLOSKEY, Senior Judge.

McGINLEY, Judge.

The Allegheny County Housing Authority (ACHA) appeals the order of the Court of Common Pleas of Allegheny County (trial court) that denied ACHA's post-trial motion after the trial court entered judgement for Janice Hibbler (Hibbler) and evicted Hibbler's son, Michael Hibbler (Michael), but not Hibbler and the rest of her family, from the premises at Hays Manor (Hays), an ACHA public housing complex located in McKees Rocks, Pennsylvania, and ruled that if Hibbler had contact with Michael at Hays ACHA could immediately petition the trial court to evict Hibbler.

Hibbler and her five children have resided at Hays since 1989. On November 30, 1995, Hibbler signed a residential lease agreement (Lease) with ACBA. Section IX.J. of the Lease provided:

To assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in: 1. Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the PHA's [ACHA] public housing premises by other residents or employees of the PHA [ACHA]; 2. Any drug-related criminal activity on or near such premises; Any criminal or drug activity in violation of the preceding sentences shall be cause for termination of tenancy, and for eviction from the dwelling unit.

Michael[1] was arrested twice within a five week period for drug offenses. First, on December 27, 1995, Michael was charged with possession with intent to deliver crack cocaine and possession of marijuana. Then, on February 4, 1996, he was charged with possession of a small amount of marijuana. Thereafter Michael was incarcerated at two juvenile facilities. Upon his release, Hibbler allowed him to stay with the family so that he could receive monitoring calls from his probation officer.

On or about February 28, 1996, ACHA served a notice of lease termination upon Hibbler. The notice alleged that Hibbler forfeited her lease because of Michael's drug-related crimes committed on Hays' property. A district justice entered judgment for the ACHA on June 13, 1996. Hibbler appealed. A board of arbitrators appointed by the trial court found in favor of ACHA. Hibbler appealed and proceeded to a *de novo* non-jury trial.

Richard Szurlej, a McKees Rocks police officer, testified on behalf of ACHA regarding Michael's arrests and convictions.

Terry Totten, manager of Hays, testified regarding Hibbler's violation of Section IX–J.

Hibbler testified that she was never informed that one violation of the lease was enough for eviction. Hibbler informed the trial court that Michael no longer lived with her, and that she was aware of the dangers of drugs. Hibbler also described her attempts to obtain counseling for Michael through his high school guidance counselor and that she accompanied him to outpatient substance abuse counseling at a hospital. She further testified that Michael's father had moved to Puerto Rico and was unavailable. Notes of Testimony, March 20, 1997, (N.T.) at 2, 4, 6–7, 9–10, 12, and 17; Reproduced Record (R.R.) at 270a, 272a, 274a–275a, 277a–278a, 280a, and 285a. Earlier in the trial, on December 5, 1996, Stephanie Kenney, Michael's aunt, had testified that she would be willing to take Michael into her household, although Hibbler testified "it didn't work out."[2] N.T. at 24; R.R. at 292a.

On April 23, 1997, the trial court ordered Michael evicted but permitted Hibbler to remain at Hays. In its opinion the trial court relied upon *Housing Authority of the City of York v. Ismond,* 700 A.2d 559 (Pa.Cmwlth.1997), *affirmed,* 556 Pa. 436, 729 A.2d 70 (1999) where this Court held that, regarding Section 8 tenants, a housing authority must exercise discretion when considering whether to evict an entire household based on the drug activity of one of its members. The trial court noted that the applicable regulation for ACHA, 24 C.F.R. 966.4($l$)(5) mirrored the regulation in *Ismond.* Because ACHA did not exercise discretion and consider any mitigating factors, the trial court concluded the procedure was manifestly unjust and contrary to HUD's policies. After the

---

1. Michael was born on August 14, 1979.

2. Hibbler supplemented the record with the deposition of Frank Aggazio (Aggazio), acting executive director of ACHA. Aggazio testified that ACHA formally adopted the Department of Housing and Urban Development's (HUD) one-strike policy for eviction for drug activity on July 8, 1996.

denial of post-trial motions, ACHA appealed.

■ ACHA contends that the trial court improperly substituted judicial discretion for administrative discretion, that the trial court erroneously determined that ACHA is obligated to exercise discretion before evicting a tenant for drug-related criminal activity. ACHA further asserted it must exercise discretion only in cases involving non-drug-related criminal activity.[3]

Initially, ACHA contends that the trial court erroneously substituted its discretion for ACHA's when the trial court evicted only Michael and not Hibbler and the other members of the household. By doing so, ACHA asserts that the trial court violated the Administrative Procedure Act, 5 U.S.C. § 701, because the housing authority has the unconditional authority to evict pursuant to 24 C.F.R. § 966.4(*l*)(5). In a companion case, ACHA asserts that this Court in *ACHA v. Liddell*, 722 A.2d 750 (Pa.Cmwlth.1998) correctly determined that the trial court exceeded its authority when it improperly substituted its judgment for that of the ACHA.

HUD's regulation at 24 C.F.R. § 966.4(*l*)(5) provides:

Eviction for criminal activity—(i) PHA [Public Housing Authority] discretion to consider circumstances. In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit. A PHA may require a family member who has engaged in the illegal use of drugs to present evidence of successful completion of a treatment program as a condition to being allowed to reside in a unit.

■ Hibbler counters that ACHA failed to timely assert that the trial court improperly substituted its discretion for the ACHA's. ACHA states there was no reason to raise the issue until the trial court issued its decision and that the issue was preserved in its post-trial motion. A review of ACHA's post-trial motion and brief in support reflects that ACHA failed to preserve this issue in its post-trial motion.[4] Generally, an issue is waived for purposes of appellate review unless it is briefed and argued during post-trial proceedings. *Weir v. Estate of Ciao*, 521 Pa. 491, 556 A.2d 819 (1989). Because ACHA failed to raise this issue in its post-trial

---

3. Our review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Zajac v. Altoona Housing Authority*, 156 Pa.Cmwlth. 209, 626 A.2d 1271 (1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994).

4. In its post-trial motion, ACHA raised the following issues:

   8. ACHA believes the Court [trial court] erred in failing to consider all of the evidence submitted by Plaintiff [ACHA].
   9. ACHA believes that substantial evidence was disregarded by the Court and it is entitled to a verdict in its favor.
   10. ACHA believes the Court abused its discretion in failing to apply the law to the facts and fashioning an award in favor of

Defendant [Hibbler], which only prohibits Michael Hibbler from staying with Defendant [Hibbler].
   11. ACHA believes the Court abused its discretion in its award by finding that if the Defendant [Hibbler] violates the Order, ACHA may petition the Court [trial court] to request immediate eviction. This Order requires ACHA to re-prove its case at a later date, which it maintains it has already adequately proven.
   12. ACHA believes this Court [trial court] abused its discretion in allowing the Defendant [Hibbler] a "second strike" thereby subjecting ACHA's other tenants to the further threat of danger.
ACHA's Post–Trial Motions at 3; R.R. at 226a.

motions and accompanying brief to the trial court, the issue is waived.

Next, ACHA contends that it is not required to exercise discretion when it decides to evict for drug-related criminal activity. ACHA believes *Ismond* is distinguishable because *Ismond* involved Section 8 housing benefits and a different regulation. Further, ACHA asserts that this Court held in *Liddell* that consideration of all of the circumstances before eviction by ACHA is not mandatory.

In *Ismond*, Queen E. Ismond (Ismond) entered into an agreement with the Housing Authority of the City of York (Housing Authority) whereby her rent for her apartment was fully subsidized by the Housing Authority.[5] In the mandatory annual personal declaration statement required under Section 8 regulations, Ismond revealed that her eldest son, Sedrick Lawrence (Sedrick), age fifteen, was involved in drug-related criminal activity during the prior year. Sedrick ultimately pled guilty to possession of cocaine with intent to deliver. On September 29, 1995, the Housing Authority notified Ismond that her Section 8 housing assistance benefits were terminated as of October 31, 1995, because of Sedrick's drug-related activity. After an informal hearing before the deputy executive director of the Housing Authority, the Housing Authority affirmed its original decision to terminate housing benefits. On appeal the Court of Common Pleas of York County reversed on the basis that the Housing Authority failed to consider the mitigating factors outlined in 24 C.F.R. § 882.216(c)(2)[6]. The Housing Authority appealed to this Court. *Ismond*, 700 A.2d at 560.

This Court determined, based on its reading of 24 C.F.R. § 882.216(c)(2)[7], that:

> Continued reading of the section, however, beginning with the second sentence that 'in appropriate cases' the housing authority "may permit the remaining members of the family to continue receiving assistance", denotes that each situation is fact specific and requires close inquiry on a case by case basis. 24 C.F.R. § 882.216(c)(2). This is accomplished by consideration of all the circumstances surrounding each individual case. Thus, in determining what is an 'appropriate case', the Housing Authority must apply all the factors/circumstances, including mitigating ones, to each specific case.

*Ismond*, 700 A.2d at 562.

This Court affirmed the common pleas court determination that the Housing Authority was required to consider the mitigating factors in 24 C.F.R. § 882.216(c)(2) before terminating Section 8 housing benefits. *Ismond*, 700 A.2d at 563. Our Pennsylvania Supreme Court affirmed. *Housing Authority of the City of York v. Ismond*, 556 Pa. 436, 729 A.2d 70 (1999).

In many ways the present case is similar to *Ismond*, even though *Ismond* involved Section 8 benefits and

---

**5.** Housing is subsidized by the federal government under Section 8 of the United States Housing Act (Section 8), *as amended,* 42 U.S.C. § 1437f.

**6.** 24 C.F.R. § 882.216(c)(2) provided:

> In determining whether to deny or terminate assistance based on drug-related criminal activity or violent criminal activity:
>
> . . . .
>
> (2) A [housing authority] shall have discretion to consider all of the circumstances in each case, including the seriousness of the offense, the extent of participation by Family members, and the effect that denial or termination would have on Family members not involved in the proscribed activity. [A housing authority], in appropriate cases, may permit the remaining members of the Family to continue receiving assistance and may impose a condition that Family members determined to have engaged in the proscribed activities will not reside in the unit. A [housing authority] may require a Family member that has engaged in the illegal use of drugs to submit evidence of successful completion of a treatment program as a condition to being allowed to reside in the unit.

**7.** 24 C.F.R. § 882.216(c)(2) has since been amended by 24 C.F.R. § 982.552(c).

*Hibbler* involves public housing benefits. The decision to terminate benefits in Ismond's case and the decision to seek eviction in Hibbler's both evolved as a result of the drug-related activity of a minor. This Court determined, and our Pennsylvania Supreme Court affirmed, that when interpreting 24 C.F.R. § 882.216(c)(2), a housing authority must consider all circumstances, including mitigating circumstances, when deciding whether to terminate Section 8 benefits. It stands to reason that a housing authority must consider all circumstances under 24 C.F.R. § 966.4(*l*)(5) when deciding whether to evict. This ACHA failed to do. The trial court found that Hibbler was a good tenant and should not be penalized for the actions of her child, actions which she attempted to prevent.

ACHA contends that this Court in *Liddell* held that a housing authority is not required to consider mitigating factors. Like Hibbler, Cheryl Liddell (Liddell) was a tenant at Hays. Liddell's cousin, Ernest Gary (Gary), frequently visited her apartment and listed it as his residence. After Gary's arrest for drug-related crimes, the ACHA served Liddell with a notice of lease termination. The district justice entered judgment in favor of ACHA. A board of arbitrators for the trial court found in favor of Liddell. ACHA then appealed to the trial court. *Liddell*, 722 A.2d at 751. The trial court allowed Liddell to remain but prohibited Gary from visiting. *Liddell*, 722 A.2d at 752. After ACHA appealed, the trial court issued one opinion addressing both Liddell's situation and Hibbler's because the two cases, though tried at different times, involved

the same issue. ACHA appealed to this Court. This Court determined that that ACHA did not have to exercise its discretion and consider mitigating factors. This Court reached this conclusion after reviewing our decision in *Housing Authority of York v. Dickerson*, 715 A.2d 525 (Pa. Cmwlth.1998) which examined the new regulation 24 C.F.R. § 982.552(c)(1), which amended 24 C.F.R. § 882.216(c)(2), and the comment to it. However, as Hibbler accurately asserts, the amended regulation addresses Section 8 benefits and not public housing. There has been no change to the public housing regulation which mirrors the former Section 8 housing regulation which required the consideration of all factors. *Ismond*. Accordingly, we find that the rationale of *Liddell* does not control the present controversy.

ACHA next contends that it does not have to exercise discretion in cases involving drug-related criminal activity because 24 C.F.R. § 966.4(*l*)(5) distinguishes between criminal activity and drug-related criminal activity and that only in cases involving criminal activity must a housing authority exercise discretion before the termination of the lease.

24 C.F.R. § 966.4(*l*)(2)[8] differentiates between two types of criminal activity: criminal activity that threatens the health, safety, or right to peaceful enjoyment of the housing authority premises by other residents and any drug-related criminal activity on or near such premises. We agree with Hibbler that at 24 C.F.R. § 966.4(*l*)(5) the term "criminal activity" includes both types of criminal activity listed in 24 C.F.R. § 966.4(*l*)(2) and that the

---

8. Further, 24 C.F.R. § 966.4(*l*)(2), provides: Grounds for termination. (i) The PHA [public housing authority] shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other cause.
(ii) Either of the following types of criminal activity by the tenant, any member of the household, a guest, or another person under the tenant's control, shall be cause for termination of tenancy:
  (A) Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the PHA's public housing premises by other residents.
  (B) Any drug-related criminal activity on or near such premises.

housing authority must exercise its discretion in either instance.

Accordingly, we affirm.

Senior Judge McCLOSKEY dissents.

## O R D E R

AND NOW, this 13th day of January, 2000, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.