# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 16, 2000 Session Heard at Jackson[1]

# MEMPHIS HOUSING AUTHORITY v. TARA THOMPSON

**Appeal by permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 94425-T.D.-7      Robert A. Lanier, Judge**

---

### No. W1998-00108-SC-R11-CV - Filed February 20, 2001

---

The appellee, Memphis Housing Authority brought this unlawful detainer action seeking to evict the appellant, tenant Tara Thompson, after drugs were discovered on the father of her child while he was inside her apartment. The trial court granted summary judgment to the appellee, and the Court of Appeals affirmed, finding that the lease agreement imposes strict liability upon the appellant for the drug-related criminal activity of her "guests and other persons under her control." We granted permission to appeal to consider the appropriate standard that applies when a public housing authority seeks to evict a tenant for drug-related criminal activity. This is an issue of first impression in Tennessee. After due consideration, we hold that the lease agreement imposes strict liability for drug-related criminal activity engaged in by the tenant or any household member <u>but</u> permits eviction for the drug related criminal activity of "guests and other persons under [the tenant's] control"only if the tenant knew or should have known of the drug-related criminal activity and failed to take reasonable steps to halt or prevent the illegal activity. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for reconsideration of the appellee's motion for summary judgment under the legal standard announced herein.

### Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed;
### Case Remanded to Trial Court

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Webb M. Brewer, Debra N. Brittenum, Margaret Barr-Myers, Nancy Percer Kessler, and Brenda Oates-Williams, Memphis, Tennessee, for the appellant, Tara Thompson.

Gregory L. Perry, Memphis, Tennessee, for the appellee, Memphis Housing Authority.

---

[1]Oral argument was heard in this case on November 16, 2000, in Jackson, Madison County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Drake Holliday, Legal Aid Society of Middle Tennessee, Nashville, Tennessee and David Kozlowski, Legal Services of South Central Tennessee, Incorporated, for the Amicus Curiae, Tennessee Association of Legal Services.

## OPINION

### Background

On October 17, 1997, the appellant, Tara Thompson, executed a lease and began residing in an apartment in the Fowler Homes Housing Development ("Fowler Homes"). Fowler Homes is owned and operated by appellee Memphis Housing Authority ("MHA"), a federally funded public housing authority within the meaning of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 et seq. ("Federal Housing Act"). A federal statute requires that public housing authorities, such as MHA, use leases that

> provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control shall be cause for termination of tenancy.

42 U.S.C. § 1437d(l)(6) (Supp. 2000). Attempting to comply with this federal statute, MHA included provisions in its lease agreements that require a tenant

> [t]o refrain from and cause household members, guests, or persons under the resident's control from engaging in any criminal activity or unlawful activity that threatens the health, safety or right to a peaceful enjoyment of the Memphis Housing Authority's public housing premises by other residents or employees of the Memphis Housing Authority which includes but is not limited to any drug-related criminal activity on or off the premises.

The lease further provides that cause for termination exists if "the resident, any members of the household, a guest of other person under the resident's control" engages in "any drug-related criminal activity on or off the premises." The lease agreement Thompson signed contained these provisions.

Thompson was pregnant with her third child when she moved into her Fowler Homes apartment in October of 1997. The record reflects that Tallen Williams, the father of Thompson's unborn child, was incarcerated in the Shelby County jail in December of 1997 and that Thompson visited Williams on three occasions. During these visits, Williams told Thompson that he had been jailed for violating his probation by failing to perform community service. Williams did not tell Thompson why he initially had been placed on probation, and Thompson did not inquire further into Williams' criminal record.

The record reflects that Thompson's and Williams' child was born on January 13, 1998. Less than one month later, on February 6, 1998, Thompson saw Williams "hanging out with his friends" at Fowler Homes. Thompson asked Williams to come to her apartment and care for her three children, including his three-week-old baby, while she did laundry. Williams agreed. While Williams was babysitting in Thompson's apartment, officers of the Memphis Police Department executed a search warrant, raided the apartment, found 0.4 grams of cocaine in Williams' possession, and arrested him. Williams told the police that the drugs belonged to him, and Thompson was not questioned or detained in connection with Williams' arrest.

One week later, however, on February 13, 1998, MHA provided Thompson a written "Three Day Notice of Termination of Lease" which advised that her lease was being terminated based upon her violation of Section 7, paragraphs L through N of her lease prohibiting drug-related criminal activity on the premises. When Thompson refused to vacate the premises, MHA brought this unlawful detainer action.

This action initially was tried in General Sessions Court where a judgment for possession was entered in favor of MHA. Thompson appealed the judgment to the Circuit Court, and MHA moved for summary judgment contending, based upon the undisputed facts, that it was entitled to terminate Thompson's lease because she had violated the lease provisions prohibiting drug-related criminal activity on the premises. Thompson argued that termination of her lease was not appropriate because she had no knowledge of Williams' illegal drug activity until after his arrest.

> The trial court initially denied MHA's motion for summary judgment, stating,
> while the contract places a heavy burden upon a tenant to take an active role in
> preventing the use of the premises by guests of the tenant who are engaged in illegal
> or drug-related activity, an entirely innocent tenant, whose ignorance of the activity
> is not due to indifference or lack of precautions on his or her part, should not be a
> basis for eviction.

In denying the motion for summary judgment, the trial court emphasized that it had considered only the written stipulation of facts and had not considered Thompson's deposition which also was in the file.

MHA filed a motion asking the trial court to reconsider its denial of summary judgment. As grounds for the motion, MHA argued that the trial court had erred by refusing to consider Thompson's deposition. The trial court agreed and granted MHA's motion for reconsideration. Upon considering Thompson's deposition, the written stipulation of facts and "the entire record," the trial court granted the motion for summary judgment and issued a writ of possession in favor of MHA.

Thompson appealed the trial court's decision, and she argued before the Western Section Court of Appeals that the trial court erred by granting summary judgment to MHA because she had no prior knowledge of Williams' illegal drug activity, and further, she had no ability to control

Williams' conduct. The Court of Appeals rejected Thompson's argument and affirmed summary judgment in favor of MHA. In so holding, the Court of Appeals stated:

> [T]he lease provisions placed upon Thompson the affirmative obligation to ensure that her guests did not engage in drug-related criminal activity while in her apartment. In light of the affirmative nature of this obligation, Thompson's actual or constructive knowledge of Williams' drug-related criminal activity was irrelevant. Regardless of her knowledge of Williams drug activity, under the terms of her lease, Thompson became responsible for such activity once she granted Williams access to her apartment. Even when viewed in the light most favorable to Thompson, the evidence presented below demonstrated that Thompson violated her lease with MHA when she granted Williams access to her apartment and subsequently failed to cause Williams to refrain from possessing illegal drugs while in the apartment. Under these circumstances, MHA had the right to enforce the lease provisions evicting Thompson.

We granted Thompson's application for permission to appeal to determine whether these federally mandated lease provisions allow a public housing authority to evict a tenant based upon the drug-related criminal activities of a "guest or other person under the tenant's control" regardless of whether the tenant had knowledge of the illegal activity. While the lease provisions impose strict liability for the drug-related criminal activity of the tenant or a household member, we conclude that eviction is appropriate based upon the drug-related criminal activity of a "guest or other person under the tenant's control," only if the tenant knew or should have known of the illegal drug-related activity and failed to take reasonable steps to prevent or halt it. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for reconsideration of the motion for summary judgment under the legal standard announced herein.

## Standard of Review

Summary judgment is appropriate where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. See Tenn. R. Civ. P. 56.04. We must take the strongest view of the evidence in favor of the non-movant, allow all reasonable inferences, and discard all countervailing evidence. See Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993). Our review concerns a question of law only. Therefore, the trial court's judgment is not presumed correct, and our review is de novo on the record before this Court. See Miller v. Willbanks, 8 S.W.3d 607, 608-09 (Tenn. 1999); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

## Standard for Eviction: Strict Liability or Knowledge?

As stated, the issue in this appeal arises from a lease provision that is mandated by federal law; therefore, we begin our analysis by considering the relevant federal law. The Federal Housing Act is intended to assist state and local governments in providing affordable housing to low income families. See Pub. L. No. 75-412, 50 Stat. 888 (1937); 42 U.S.C. § 1437(a); Punishing the Innocent:

No-Fault Eviction of Public Housing Tenants for the Actions of Third Parties, 76 Tex. L. Rev. 1495, 1498 (1998). Under the Act, responsibility for managing, maintaining, and operating public housing developments is vested in local public housing agencies, such as MHA, rather than the federal government. See 42 U.S.C. § 1437(a)(1)(c). To obtain federal funding, however, local public housing agencies must agree to abide by federal law and by federal regulations, promulgated by the Department of Housing and Urban Development ("HUD"). See generally 42 U.S.C. § 1437(g).

Concerned about the prevalence of crime in public housing developments, Congress passed the Cranston-Gonzalez National Affordable Housing Act of 1990. See Pub. L. 101-625. This legislation required all public housing agencies to include in their leases the following provision:

> any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

42 U.S.C. § 1437(d)(l)(6). The scope of this statute was broadened further by a 1996 amendment which replaced the phrase "on or near such premises," with the phrase "on or off such premises." See Pub. L. 104-20 § 9(a)(1); 42 U.S.C. § 1437(d)(l)(6).

To implement this statutory mandate, HUD promulgated regulations that require public housing authorities to include a provision in their leases

> [t]o assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in . . . any drug-related criminal activity on or near such premises. Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit.

24 C.F.R. § 966.4(f)(12)(i)(B). Another regulation similarly provides that any drug-related criminal activity on or off the premises "by the tenant, any member of the household, a guest, or another person under the tenant's control, shall be cause for termination of tenancy." 24 C.F.R. § 966.4(l)(2)(ii)(B). Consistent with these regulations, in 1996 the Clinton administration announced a "One Strike and You're Out" policy which encouraged local public housing authorities to take full advantage of these federal statutes to promote community safety in public housing. See 76 Tex. L. Rev. at 1503.

Attempting to comply with these federal laws, MHA has included the following provisions in its leases:

7.      OBLIGATIONS OF RESIDENT
        Resident Agrees:

* * * *

L. To conduct himself/herself and cause other household members to conduct themselves in a manner which will not disturb any public housing Resident's peaceful enjoyment of their accommodations and which will be conducive to maintaining the Memphis Housing Authority public housing developments in a decent, safe, sanitary and crime-free environment;

M. To refrain from illegal or other activity which impairs the physical or social environment of the development, and cause other persons who are on the premises with the resident's consent to refrain from illegal or other activity which impairs the physical or social environment of the development or interferes with the health, safety or right of peaceful enjoyment of the premises by other residents;

N. To refrain from and cause household members, guests, or persons under the resident's control from engaging in any criminal activity or unlawful activity that threatens the health, safety or right to a peaceful enjoyment of the Memphis Housing Authority's public housing premises by other residents or employees of the Memphis Housing Authority which includes but is not limited to any drug-related criminal activity on or off the premises;

The term "drug-related criminal activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act (21 U.S.C. 802), or of any other illicit drug).

The term "criminal activity" shall mean an act that violates city, state, or federal criminal laws.

* * * *

15. TERMINATION OF THE LEASE

Management shall not terminate or refuse to renew the lease other than for serious or repeated violations of the material terms of the lease, the Resident Handbook, or MHA Statement of Policies, such as failure to make payment due under the lease or to fulfill the resident's obligations set forth in Section 7, or for other good cause. The resident agrees that the violation of any of the obligations of

residents A thru W is a serious violation of a material term of the lease, and is good cause for termination of the lease.

Either of the following types of criminal activity by the resident; any members of the household, a guest, or other person under the resident's control, shall be cause for termination of tenancy and such termination shall be excluded from resident's right to a grievance hearing.

\* \* \* \*

B.	Any drug-related criminal activity on or off the premises or alcohol abuse which interferes with the health, safety or right to peaceful enjoyment of the resident. The resident agrees that any drug-related criminal activity on or off the premises interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents and is not conducive to maintaining Memphis Housing Authority Public Housing Development in a decent, safe, sanitary and crime-free environment and creates a threat to the health and safety of other residents.

The parties to this appeal sharply disagree as to the appropriate standard for determining whether eviction is proper under these lease provisions. Thompson and amicus curiae Tennessee Association of Legal Services argue that termination of a tenancy is proper only if a tenant knew or should have known of the drug-related criminal activity and failed to take appropriate action to prevent or halt the criminal activity. In contrast, MHA asserts that the lease provisions impose strict liability, meaning that termination of a tenancy and eviction are appropriate even if a tenant had no knowledge of the illegal activity.

No Tennessee court has considered this precise issue.[2] Courts in other jurisdictions are split on the issue. Some courts have adopted the standard advanced by MHA and hold that such lease provisions impose strict liability for all drug-related criminal activity. See City of San Francisco Hous. Auth. v. Guillory, 49 Cal. Rptr.2d 367 (App. Dep't Super. Ct. 1995); Housing Auth. of New Orleans v. Green, 657 So.2d 552 (La. Ct. App. 1995); Ann Arbor Hous. Comm'n v. Wells, 618 N.W.2d 43 (Mich. Ct. App. 2000); Minneapolis Pub. Hous. Auth. v. Lor, 591 N.W.2d 700 (Minn. 1999); Syracuse Hous. Auth. v. Boule, 701 N.Y.S.2d 541 (App. Div. 1999). Emphasizing that the federal statute mandating these lease provisions does not contain an explicit knowledge requirement,

_____

[2]In framing their argument, both the appellant and the amicus curiae rely upon unreported intermediate appellate court decisions that construe similar lease provisions addressing generally disruptive or criminal conduct. However, these decisions are not particularly instructive since the language of both the lease provisions and the federal statutes from which they are derived are different.

these courts have refused to imply a knowledge requirement by the statute's use of the phrase "under the tenant's control." According to the Louisiana Court of Appeals:

> knowledge requirements in statutes are so common in general and so obviously relevant to this particular issue that we reject the argument that Congress either failed inadvertently to include a knowledge requirement, somehow included it by implication, or said "control" but really meant knowledge.

Green, 657 So.2d at 554. The Michigan Court of Appeals concluded that the federal statute

> evinces a clear congressional intent to authorize termination of tenancy regardless of whether the tenant was aware that his household member or guest was selling, manufacturing, distributing, or using drugs.

Wells, 618 N.W.2d at 47 (quoting Rucker v. Davis, 203 F.3d 627, 637 (9th Cir. 2000), rev'd en banc Rucker v. Davis, Nos. 98-16322 & 98-16542, 2001 WL 55724 (9th Cir. 2001) (en banc)).

Moreover, these courts stress that regardless of their origin in federal law, provisions in public housing leases are contract terms to which the ordinary rules of contract interpretation apply. One such rule is that clear and unambiguous terms must be enforced without further interpretation, even if enforcement produces harsh results. See Guillory, 49 Cal. Rptr.2d at 369; Lor, 591 N.W.2d at 704. Finding no ambiguity in the phrase "any drug-related criminal activity," these courts conclude that the provision imposes strict liability and opine that the scope of this phrase is the same as the phrase "any drug related criminal activity including that of which the tenant is unaware." Wells, 618 N.W.2d at 47. Exemplifying this perspective, the California court observed that by mandating such lease provisions "Congress enacted a straight-forward practical method of dealing with a serious public safety problem." Guillory, 49 Cal. Rptr.2d at 371; see also Boule, 701 N.Y.S.2d at 542.

While generally agreeing that clear and unambiguous lease provisions must be given their plain and ordinary meaning, several other courts have determined that these particular federally mandated lease provisions are not clear and unambiguous. Adopting the position advocated by Thompson and Amicus Curiae, these courts have construed the ambiguous provisions to permit eviction only if the tenant knew or should have known of the drug-related criminal activity and failed to prevent or halt it. See Rucker v. Davis, Nos. 98-16322 & 98-16542, 2001 WL 55724 (9th Cir. 2001) (en banc); Kimball Hill Management Co. v. Roper, 733 N.E.2d 458 (Ill. App. Ct. 2000); American Apartment Management Co. Inc. v. Phillips, 653 N.E.2d 834 (Ill. App. Ct. 1995); Diversified Realty Group, Inc. v. Davis, 628 N.E.2d 1082 (Ill. App. Ct. 1993); Charlotte Hous. Auth. v. Patterson, 464 S.E.2d 68 (N.C. Ct. App. 1995); Delaware County Hous. Auth. v. Bishop, 749 A.2d 997 (Pa. Commw. Ct. 2000). Noting that the term "control," used in the phrase "under the tenant's control," is not defined, these courts consider the legislative history of the federal statute from which these lease provisions were taken almost verbatim. See Patterson, 464 S.E.2d at 71;

<u>Bishop</u>, 749 A.2d at 1002. Of particular importance is the congressional committee report that accompanied the 1990 Cranston-Gonzalez Affordable Housing Act, which stated:

> The Committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the [public housing authority] and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.

S. Rep. No. 316, 101st Cong., 2d Sess. 179 (1990), reprinted in 1990 U.S.C.C.A.N. 5763, 5941; <u>see also</u> <u>Patterson</u>, 464 S.E.2d at 71; <u>Bishop</u>, 749 A.2d at 1002 (quoting and discussing the committee's report) . The North Carolina Court of Appeals described this committee report as

> clearly expressed legislative intent that eviction is appropriate only if the tenant is personally at fault for a breach of the lease, i.e., if the tenant had knowledge of the criminal activities, or if the tenant had taken no reasonable steps under the circumstances to prevent the activity. The legislative history makes clear that Congress did not intend the statute to impose a type of strict liability whereby the tenant is responsible for all criminal acts regardless of her knowledge or ability to control them.

<u>Patterson</u>, 464 S.E.2d at 557. A majority of the United States Court of Appeals for the Ninth Circuit has also concluded that by this committee report Congress specifically rejected the notion that a public housing authority's discretion is so broad that it extends to the eviction of innocent tenants. <u>See</u> <u>Rucker</u>, 2001 WL 55724 at *10.

Sometimes cited as supporting the view that the statute does not impose strict liability is the HUD regulation which instructs:

> In deciding to evict for criminal activity, the [public housing authority] shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity.

24 C.F.R. § 966.4(l)(5)(i); <u>see also</u> 76 Tex. L. Rev. at 1520 (asserting that the regulation permits the public housing authority to exercise discretion, which indicates that the lease provisions do not impose strict liability).

After carefully reviewing these conflicting decisions, we consider the threshold inquiry to be whether or not the language of the lease provides a clear answer to the question presented. In Tennessee, when construing a lease courts can not make a new contract for the parties. <u>See</u> <u>Cain Partnership Ltd. v. Pioneer Inv. Services Co.</u>, 914 S.W.2d 452, 462 (Tenn. 1996). Where the wording of the lease is unambiguous, the clear language must be interpreted and enforced as written

even though it contains terms which may be considered harsh and unjust by a court. Id. at 464. However, ambiguous lease provisions must be construed against the party drafting the lease. Id. at 462; see also Spiegel v. Thomas, Mann & Smith, P.C., 811 S.W.2d 528, 531 (Tenn. 1991); Marshall v. Jackson & Jones Oils, Inc., 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999).

> The lease provisions at issue in this appeal require Thompson
>
> [t]o refrain from and cause household members, guests, or persons under the resident's control from engaging in any criminal activity or unlawful activity . . . which includes but is not limited to any drug-related criminal activity on or off the premises.

The lease further provides that "[a]ny drug-related criminal activity on or off the premises" by Thompson, "any members of the household, a guest, or other person under the resident's control, shall be cause for termination of tenancy." These lease provisions refer to four separate categories of people: (1) the resident (Thompson); (2) household members; and (3) guests or (4) other persons under the resident's control. The phrase, "under the resident's control," relates only to the last two categories – guests or other persons. Although other courts have applied a single standard to all four categories, we conclude that applying a single standard is not consistent with the plain language of either the lease provisions in this case or the federal statutes from which they are derived. While both the language of this lease, and the federal statute from which it is derived, clearly impose strict liability upon the resident or household members for engaging in drug-related criminal activity, the language is not clear with respect to the standard that applies to a guest or other person under the resident's control.

The phrase "under the resident's control" is not defined in the lease or in the federal statute. In addition, as previously stated, there is a split of authority among other jurisdictions as to the meaning of the phrase as it is used in the federal statute and the lease provisions derived from that statute. Where language in a contract or statute is susceptible of more than one reasonable interpretation the language is ambiguous. See Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997) ("The mere fact that this [statutory] phrase is reasonably interpreted either way makes it ambiguous. Where the language of a legislative provision is unclear, the Court should look behind the face of the statute to determine the legislature's intent.); Tata v. Nichols, 848 S.W.2d 649, 650-51 (Tenn. 1993) (applying this rule to an insurance contract and finding ambiguity because the term had been interpreted differently by various other jurisdictions considering the issue). This portion of the lease provision is ambiguous. As other courts have found, both the legislative history and the HUD regulation suggest that this ambiguous phrase should be interpreted as allowing evictions only if the tenant knew or should have known of the drug-related criminal activity of a guest or other person under the tenant's control. See Patterson, 464 S.E.2d at 71; Bishop, 749 A.2d at 1002. The congressional committee report specifically declares, "[f]or example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity." (Emphasis added.) By

allowing the public housing authority to consider the involvement or participation of family members, the HUD regulation also suggests a knowledge requirement.

Finally, while a standard of strict liability is sensible when it is applied to the resident or household members, such a standard yields absurd results when it is applied to guests or other persons.[3]  For example, MHA asserted during oral argument that eviction would be appropriate where a pizza delivery person enters a public housing tenant's apartment in possession of drugs, even though the tenant had no knowledge or information about the drug-related criminal activity.  We do not believe Congress intended such an absurd result.

Accordingly, we conclude that neither federal law nor the lease provisions impose a standard of strict liability for the drug-related criminal activities of Thompson's guests or other persons under her control.[4]  The phrase "under the resident's control" permits eviction only if MHA establishes that Thompson knew or should have known of the drug-related criminal activity "of a guest or other person"and failed to take reasonable steps to prevent or halt it.  Not only is this construction consistent with federal legislative history and HUD regulations, it is consistent with Tennessee law which requires that ambiguous terms in a lease be construed against the drafter of the instrument, in this case MHA.

Under this standard, both the public housing authority and the eviction court will be required to carefully consider the facts when an eviction is sought because of the drug-related criminal activities of a guest or other person under the tenant's control.  In determining whether a tenant knew or should have known of the illegal conduct, courts should consider whether the guest or other person had a prior criminal record and, if so, whether the tenant had notice of the prior criminal record.  As the Massachusetts Supreme Court held, a tenant's duty to take reasonable steps to prevent or halt illegal activity may on occasion require the tenant to seek outside intervention from social services agencies or law enforcement officials.  See Spence v. Gormley, 439 N.E.2d 741, 265 (Mass. 1982).  When a tenant has taken such measures, however, the tenant should not be held responsible for illegal activities that nevertheless occur.  Id.

---

[3]A tenant will have no trouble ascertaining the identities of those persons for whom the tenant will be held strictly liable if all public housing authorities use leases similar to this one which requires the tenant to list all household members by relationship, age, and social security number and obligates the tenant to notify the public housing authority within ten days of the date on which the composition of the family changes.

[4]Having so concluded, we need not address Thompson's assertion that a standard of strict liability for the drug-related criminal activity of others would violate her constitutional substantive due process right.  It is well-established that courts decide constitutional issues only when necessary.  See State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996); Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

## **Conclusion**

Having articulated the appropriate standard, we reverse the decision of the Court of Appeals and remand to the trial court for consideration of MHA's motion for summary judgment under the legal standard announced herein.

_____

FRANK F. DROWOTA, III, JUSTICE