# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 3, 2000 Session

## WESSINGTON HOUSE APARTMENTS v. ASHLEY CLINARD

**Appeal from the Circuit Court for Sumner County**
**No. 18637-C     Thomas Goodall, Judge**

---

**No. M1999-01029-COA-R3-CV - Filed June 5, 2001**

---

Appellee, a privately owned, government subsidized apartment complex filed an unlawful detainer action seeking to evict appellant, Ashley Clinard, after a small amount of marijuana was found in her apartment. A guest admitted to having the marijuana despite Ms. Clinard's expressed prohibition against drugs in her apartment. The circuit court entered a judgment for possession of the premises against the defendant, interpreting provisions of the lease, one required by federal law and the other allowed by Tennessee law, to permit eviction of a tenant for drug related actions of a guest, even without the knowledge of the tenant. Based upon the Tennessee Supreme Court's decision in *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504 (Tenn. 2001), holding that a tenant may not be evicted for drug related criminal activities of a guest, under federally-required lease provisions, unless the tenant knew or should have known of the activity and failed to take reasonable steps to prevent it, and because the evidence shows that Ms. Clinard had no reason to know that her guest had marijuana in her apartment, we conclude the eviction based on that provision must be reversed. Additionally, because we find that temporary mere presence of a small amount of marijuana does not constitute "a violent act" or "a real and present danger to the health, safety or welfare of the life or property of other tenants or persons," we conclude that state law does not authorize the summary eviction. Accordingly, we reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

David M. Pollard, Jr., Goodlettsville, Tennessee, for the appellant Ashley Clinard.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Wessington House Apartments.

Drake Holliday, Legal Aid Society of Middle Tennessee, Nashville, Tennessee, and David Kozlowski, Legal Services of South Central Tennessee, Inc., Tullahoma, Tennessee for the Amicus Curiae, Tennessee Association of Legal Services.

# OPINION

Defendant Ashley Clinard, a single mother of a toddler and a full-time college student,[1] was a tenant in Wessington House Apartments, a privately owned, government subsidized apartment complex in Hendersonville.

Ms. Clinard signed a lease which allowed the landlord to terminate the lease within three days "if the tenant or any other persons on the premises with the tenant's consent willfully or intentionally commits a violent act or behaves in a manner which constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants or persons on the premises." She also signed a "Lease Addendum for Drug Free Housing" in which she agreed that a single violation of the prohibition against "drug related criminal activity" by a member of her household "or a guest or other person(s) under [her] control" would be cause for summary eviction.

On the night of June 20, 1998, Ms. Clinard had three guests over to watch videos and permitted them to spend the night. The police awakened Ms. Clinard after midnight, asking for permission to search her car and her apartment for stereos and speakers which had been removed from a burglarized car.[2] Ms. Clinard consented to the search. While searching the apartment, officers lifted a cushion on the sofa where Greg Darden, one of the guests, had been sleeping. Underneath the sofa cushion, they found a "Crown Royal" bag containing a small amount of marijuana, described as one joint or less. Mr. Darden confessed to possessing the marijuana and was issued a misdemeanor citation in lieu of arrest.[3]

Shortly thereafter, Wessington House gave Ms. Clinard notice that it intended to enforce the three day termination of tenancy provision in the lease. When Ms. Clinard refused to vacate the apartment, Wessington House filed a detainer warrant against her in General Sessions Court. The General Sessions Court dismissed the action at the close of plaintiff's proof and Wessington House appealed to the Circuit Court.

At that trial, Wessington House admitted that it had no proof that Ms. Clinard knew Mr. Darden possessed drugs, but argued that such knowledge was not a prerequisite for eviction. Both Ms. Clinard and Mr. Darden testified that Ms. Clinard did not know the marijuana was in the

---

[1] She attended Volunteer State Community College, and was pursuing an associates degree in nursing, maintaining a 3.0 grade point average.

[2] Earlier in the evening, Ms. Clinard had noticed a car belonging to a friend parked close to her apartment and left a note on the car, asking the friend to call her. A police officer apparently saw her near the car. The car on which Ms. Clinard had left the note was later burglarized. Ms. Clinard's observed presence was the reason police came to her apartment.

[3] As a first offender entering a guilty plea to simple possession, Mr. Darden was fined $500 and placed on probation. He was also permanently banned from the Wessington House Apartments.

apartment, and that she had told Mr. Darden and other friends not to bring drugs there. Ms. Clinard said that she opposed drug use because her father had used drugs.

Mr. Darden testified that he had not intended to bring the marijuana to Ms. Clinard's apartment, but that he had found the joint in his pocket after he changed clothes at her apartment and had put it into the bag with his belongings. He had inadvertently left it in the pocket of the pants he had been wearing when someone had given the marijuana to him the day before. When asked what he intended to do with the marijuana, Mr. Darden said he had planned to give it to "this girl who gets high." He said he had stopped using marijuana about a year earlier because his employer gave weekly drug tests.[4]

The trial court ruled that "[t]he Lease, Lease Addendum, and the Statute do not require any showing by Apartments that the Defendant had knowledge of the acts of a guest," and issued a writ of possession in favor of Wessington House. Ms. Clinard appeals.

## I. Analysis

The trial court based its decision on the "contractual violation of the Lease Contract, and [the] contractual violation of the Lease Addendum for Drug-Free Housing" and the "violation of applicable State Law, T.C.A. § 66-28-517." Thus, we must examine both the federal law basis and the state law basis.

## A. Federal Law Basis

As noted above, Wessington House is privately owned but receives assistance payments from the federal government. As such, certain provisions are included in the lease pursuant to federal law. Ms. Clinard's lease contained a "Lease Addendum for Drug Free Housing," which provided:

> 1. Tenant, any member of the tenant's household, or a guest or other person(s) under the tenant's control shall not engage in criminal activity, including drug related criminal activity, on or near the project premises. "Drug Related Criminal Activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act [21 H.S.C. 802]).
>
> 2. Tenant, any member of the tenant's household, or a guest or other person(s) under tenant's control shall not engage in any act intended to facilitate criminal activity, including drug related criminal activity on or near project premises.

---

[4]The trial court, seeking to determine Mr. Darden's "credibility," asked him if he had used drugs recently and if he would be willing to take a drug test. When Mr. Darden asserted his willingness to take the test, the court ordered one of its officers to take him to another room and test him. A few minutes later, the court officer announced that Mr. Darden had tested negative for drug use.

* * *

6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE LEASE AND GOOD CAUSE FOR TERMINATION OF THE TENANCY. A Single violation of any of the provisions of this addendum shall be deemed a serious violation and a material non-compliance with the lease. It is understood and agreed that a single violation shall be good cause for termination of the lease. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence. . . .

This language was added to the lease because of federal law requirements that leases used by privately-owned Section 8 housing landlords include provisions that:

during the term of the lease, any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenant, any criminal activity that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises, or any drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control shall be cause for termination of tenancy.

42 USC § 1437f(d)(1)(B)(iii).

Our Supreme Court has recently addressed the issue of whether a similar lease provision, based on the same federal law requirements, creates strict liability for a tenant or whether eviction based on such a provision requires a showing of knowledge or reason to know on the part of the tenant in *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504 (Tenn. 2001).[5] In that case the tenant, Ms. Thompson, lived in federally funded public housing rather than private housing with public assistance. The controlling federal statute in *Thompson* required that each public housing agency utilize leases which included a provision that any drug-related criminal activity by the tenant or a guest under the tenant's control was cause for termination, in language mirroring the provision applicable in the case before us.[6]

---

[5] In their briefs and at oral argument, both sides recognized the significance of the intermediate appellate court decision in *Thompson* and were aware that permission to appeal had been requested. A few days after the argument herein, the Tennessee Supreme Court granted permission to appeal in *Thompson*.

[6] 42 U.S.C. § 1437d(*l*)(6) provides that public housing agencies shall utilize leases which:

provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

-4-

Ms. Thompson's lease included a provision designed to implement the statute, which required her

> [t]o refrain from and cause household members, guests, or persons under the resident's control from engaging in any criminal activity or unlawful activity that threatens the health, safety or right to a peaceful enjoyment of the . . . premises . . . which includes but is not limited to any drug-related criminal activity on or off the premises.

38 S.W.3d at 506. The lease could be terminated on three days' notice for a violation of that provision. *Id.*

Ms. Thompson was a single mother with three young children. The father of her youngest child was "hanging out with his friends" near her apartment when she saw him and asked him to babysit while she did laundry. While she was gone, the Memphis police executed a search warrant, raided the apartment and found 0.4 grams of cocaine in the father's possession. He admitted the drugs were his, and he was arrested. Ms. Thompson was not questioned or detained. She consistently maintained that she had no knowledge of the father's illegal drug activity until after his arrest.

Shortly after the father's arrest, Ms. Thompson received a "Three Day Notice of Termination of Lease," which advised her that she was being evicted because of her violation of the lease provision prohibiting drug related activity on the premises. Ms. Thompson refused to leave and Memphis Housing Authority brought an unlawful detainer action against her in General Sessions Court. That court entered a judgment for possession in favor of Memphis Housing Authority, and Ms. Thompson appealed to the Circuit Court, which granted the plaintiff's motion for summary judgment and issued a writ of possession in favor of Memphis Housing Authority. Ms. Thompson appealed to the Court of Appeals, which affirmed the trial court, holding that Ms. Thompson had an "affirmative obligation to ensure that her guests did not engage in drug-related criminal activity while in her apartment" and that she was responsible for the violation of the lease. *Id.* at 507. The Tennessee Supreme Court granted Ms. Thompson's application for permission to appeal to determine "whether these federally mandated lease provisions allow a public housing authority to evict a tenant based upon the drug-related activities of a 'guest or other person under the tenant's control' regardless of whether the tenant had knowledge of the illegal activity." *Id.*

The Court surveyed similar cases in other jurisdictions, finding a split among the courts. *Id.* at 509-10. Those courts which applied the "knew or should have known" standard found portions of the mandated provisions to be ambiguous, particularly the phrase "under the tenant's control," and looked to the legislative history for guidance. *Id.* Particularly persuasive to the courts which did not impose strict liability was the congressional committee report which accompanied the 1990 Cranston-Gonzalez Affordable Housing Act. It stated:

> The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the [public housing authority]

and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.

*Id*. at 511 (quoting S. Rep. No.316, 101st Cong., 2d Sess. 179 (1990)).

Our Supreme Court noted the North Carolina Court of Appeals' statements regarding the committee report:

[The] clearly expressed legislative intent [is] that eviction is appropriate only if the tenant is personally at fault for a breach of the lease, i.e., if the tenant had knowledge of the criminal activities, or if the tenant had taken no reasonable steps under the circumstances to prevent the activity. The legislative history makes clear that Congress did not intend the statute to impose a type of strict liability whereby the tenant is responsible for all criminal acts regardless of her knowledge or ability to control them.

*Id.* (quoting *Charlotte Hous. Auth. v. Patterson*, 464 S.E.2d 68, 72 (N.C. App. 1995)).

The Court also noted that 24 C.F.R. § 966.4(*l*)(5)(i), which provides, "In deciding to evict for criminal activity, the [public housing authority] shall have discretion to consider all of the circumstances of the case . . .," was sometimes cited as supporting the view that eviction was not required in all circumstances. *Id.*

Our Supreme Court found the lease terms ambiguous, and because of the ambiguity,[7] the Court looked to the legislative history and the federal regulation for the legislature's intent in passing the law and concluded:

neither federal law nor the lease provisions impose a standard of strict liability for the drug-related criminal activities of Thompson's guests or other persons under her control. The phrase "under the resident's control" permits eviction only if MHA establishes that Thompson knew or should have known of the drug-related criminal activity "of a guest or other person" and failed to take reasonable steps to prevent or halt it. Not only is this construction consistent with federal legislative history and

---

[7]In examining the lease provisions, the Court noted that ambiguous provisions must be construed against the drafter. 38 S.W3d at 511. The lease provided that cause for termination of tenancy existed if "any members of the household, a guest, or other person under the resident's control" engaged in "drug-related criminal activity on or off the premises." *Id.* The Court interpreted the provision to refer to "four separate categories of people: (1) the resident . . .; (2) household members; and (3) guests or (4) other persons under the resident's control." *Id.* at 511-12. The Court then found the phrase "under the tenant's control," to refer to only the last two categories, guests or other persons. *Id.* The Court interpreted the language as clearly imposing strict liability upon the resident or household members for drug related activity, but found "under the resident's control" to be ambiguous.

HUD regulations, it is consistent with Tennessee law which requires that ambiguous terms in a lease be construed against the drafter of the instrument . . .

*Id.* at 512-13.

Under the standard announced by the Court,

both the public housing authority and the eviction court will be required to carefully consider the facts when an eviction is sought because of the drug-related criminal activities of a guest or other person under the tenant's control. In determining whether a tenant knew or should have known of the illegal conduct, courts should consider whether the guest or other person had a prior criminal record and, if so, whether the tenant had notice of the prior criminal record. . . . [A] tenant's duty to take reasonable steps to prevent or halt illegal activity may on occasion require the tenant to seek outside intervention from social service agencies or law enforcement officials. When a tenant has taken such measures, however, the tenant should not be held responsible for illegal activities that nevertheless occur.

*Id.* at 513 (citations omitted). The Court then remanded the case for consideration of the motion for summary judgment in light of the announced standard. *Id.*

The only real difference between *Thompson* and the case before us is that Ms. Clinard lived in privately owned housing, while Ms. Thompson lived in publicly owned housing. The statutory language found in the sections dealing with each type of housing is essentially the same, and *Thompson* controls our disposition of the first issue in this appeal.

Accordingly, we modify the trial court's conclusion that no showing was required that Ms. Clinard knew of her guest's activities, and hold that Wessington House had the burden of establishing that Ms. Clinard had knowledge or should have had knowledge of her guest's possession of marijuana or other drug-related activity.

In our review of the trial court's findings of fact, we must review those findings *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) In the case before us, the undisputed evidence showed that Ms. Clinard did not know that her friend had marijuana with him and also shows that she had specifically prohibited drugs in her apartment. The evidence preponderates against the trial court's finding that "it was clearly foreseeable, in fact, predictable, that the Defendant's guest, a known drug user, could have drugs on or about the premises." There is no evidence that the guest had used drugs in over a year or that Ms. Clinard had any reason to believe he would have been in possession of drugs at the time. He had been a guest in her home before and testified he had never taken drugs there before. Additionally, Ms. Clinard had made it clear to friends and guests that she would not allow drugs in her apartment. Without some reason to suspect that Mr. Darden would violate that prohibition on the occasion in question, we are not convinced she was required to do more. Based upon our Supreme Court's holding in *Thompson*, that

-7-

eviction is permitted "only if [the landlord] establishes that [the tenant] knew or should have known of the drug-related criminal activity 'of a guest or other person' and failed to take reasonable steps to prevent or halt it," we must reverse the trial court's grant of the writ of possession based on the lease addendum.

## B. State Law Basis

The trial court also based its grant of possession on its conclusion that "[t]he Lease . . . and the Statute do not require any showing by Apartments that the Defendant had knowledge of the acts of a guest." Ms. Clinard's lease contains a provision, to which the court referred, allowing the landlord to terminate the lease within three days from the date written notice is delivered:

> . . . if the Tenant or any other persons on the premises within [sic] the Tenant's consent willfully or intentionally commits a violent act or behaves in a manner which constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other Tenants or persons on the premises.

This provision tracks the language of Tenn. Code Ann. § 66-28-517(a) which states:

> A landlord may terminate a rental agreement within three (3) days from the date written notice is delivered to the tenant if the tenant or any other person on the premises with the tenant's consent willfully or intentionally commits a violent act or behaves in a manner which constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants or persons on the premises.

Necessary to the trial court's holding that the lease may be terminated based on the above provision and statute without a showing of knowledge is its implicit conclusion that Mr. Darden's placing a single marijuana cigarette in a bag underneath a cushion constituted either an intentional "violent act" or a "real and present danger" to other tenants or persons on the premises.

The quoted statute and lease govern summary termination, with only three days' notice. The ability of a landlord to evict a tenant with so little warning, contrary to other termination provisions,[8] is limited to the most egregious situations involving potential danger to other tenants. Thus, summary termination is allowed if a tenant or guest commits an intentional violent act or behaves in a manner which "constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants or persons on the premises." There is no evidence to support a finding that Mr. Darden committed a violent act. The question, therefore, is whether there

---

[8] For example, the Tennessee Uniform Residential Landlord and Tenant Act allows a landlord to terminate a lease for a breach or noncompliance by giving a thirty-day notice. Tenn. Code Ann. § 66-28-505(a). Lease provisions may provide for greater notice.

is evidence to support a finding that possession of one marijuana cigarette, found inside a bag and under a sofa cushion, was or threatened to be a danger to other tenants.

Cases under Tennessee's statute are few. In *Fairview Limited v. Daniel*, No. 03A01-9703-CV-00071, 1997 WL 304125 at *2-3 (Tenn. Ct. App. June 5, 1997) (perm. app. denied Jan. 5, 1998), this court held that the statute allowed eviction of tenant who threatened the lives of others, assaulted a police officer, and created a disturbance in the common area of the apartments, stating, "there is little doubt that the conduct of the appellant was within the prohibition of the statute: she committed a violent act and threatened the lives of other persons on the premises." *Id.* at *3. Because Mr. Darden's conduct did not include any violent act, the *Fairview* case is of little assistance.

The statutory provision at issue was an amendment to the Tennessee Uniform Residential Landlord Tenant Act. Some other states have enacted somewhat similar provisions, allowing summary termination of leases in cases in which tenants pose threats to others on the premises. Thus, other state courts have interpreted similar language in other factual situations. For example, use of the premises for illegal drug sales warranted eviction in *Spence v. O'Brien*, 446 N.E.2d 1070, 1073 (Mass. Ct. App. 1983). *See also City of New York v. Wright*, 636 N.Y.S.2d 33, 34-35 (N.Y. App. Div. 1995) (eviction proceeding of tenant who had "35 jumbo vials of crack cocaine, drug paraphernalia, cash and a gun" was to protect the "health, safety and welfare of the other tenants").

However, in *Housing Authority of Decatur v. Brown*, 349 S.E.2d 501 (Ga. Ct. App. 1986), the court held that possession of marijuana did not pose such a threat as to allow summary eviction. In that case, the tenant was arrested with a small amount of marijuana, ostensibly for personal use. *Id*. at 503. The Housing Authority, several months later, served the tenant with notice contending that he violated a provision of his lease that allowed termination with ten days' notice "in cases where the tenant created or maintained a threat to the health or safety or other tenants." *Id.* The trial court dismissed the possessory warrant, and the Georgia appellate court affirmed, based in part on the conclusion "that the mere violation of marijuana possession even on two occasions [neither] creates a hazardous situation for other tenants nor interferes with their peaceable possession." Id.

Similarly, in *Housing Authority of Jersey City v. Myers*, 685 A.2d 532 (N.J. Super. 1996), the Superior Court of New Jersey dismissed a summary dispossession action. The Housing Authority of Jersey City sought to terminate the tenancy of a man who was arrested for possession of controlled dangerous substance paraphernalia after he was found to have three empty glassine bags in his possession. *Id*. at 532. While the case was decided under federal law, the court noted that summary eviction was allowed only where criminal activity threatened the health of other tenants. *Id.* at 534. While noting that some criminal activity would rise to the level to require summary eviction, the court determined that each case should be determined on its own facts. *Id.* Because the Housing Authority could not show that the tenant was a threat to the other tenants, the court dismissed the complaint. *Id.*

In the case before us, Mr. Darden was not accused of selling marijuana or of using it. There is no evidence he attempted to do either at the apartment. He had a very small amount hidden inside

a bag underneath the sofa cushion. Had the police not entered the apartment and found the marijuana, its presence would have gone unnoticed by Ms. Clinard and her neighbors. There was no evidence drugs had ever been present in the apartment before. We conclude that Mr. Darden's possession of the marijuana did not trigger the termination provisions of the statute or of the lease, and the issuance of the writ of possession was improper based on those grounds. While not discounting the dangers posed by drugs in our society, we cannot conclude that the undiscovered presence of a single marijuana cigarette rises to the level of "real and present danger" anticipated by the statute or the lease provision which allows eviction on only three days' notice.

We also conclude that a finding that the tenant knew or should have known of the prohibited activity is a prerequisite for eviction under this particular lease provision and Tenn. Code Ann. § 66-28-517(a). In *Investors Diversified Property Management, Inc. v. Brown*, No. 87-360-II, 1988 WL 102781 (Tenn. Ct. App. Oct. 7, 1988) (no Tenn. R. App. P. 11 application filed), this court applied the "knew or should have known" standard to an identical contract provision. 1988 WL 102781 at *2. In that case, as in the one before us, the tenant lived in privately owned housing subsidized by the federal government. The tenant's child assaulted another child, an intentional "violent act," which also constituted a "real and present danger to the health, safety or welfare" of the other child, and the landlord sought to evict the tenant and her children. This court found that the landlord did not have good cause to evict the tenant and her family because the tenant "did not know, nor did she have cause to know, that her eleven-year-old son . . . had a tendency to commit such a violent or dangerous act." *Id.* While acknowledging that the son's act was "abhorrent," this court was of the opinion that there was not "'good cause' to evict an entire family for a single offense . . . when the mother had no warning of the act, no opportunity to stop it, and no chance to remedy her child's conduct." *Id.* at *3.

We interpret *Brown* as establishing the same "knew or should have known" standard for summary lease termination under Tenn. Code Ann. § 66-28-517(a) as *Thompson* established for summary termination under the federal drug free housing statutes, including whether the tenant took reasonable action to prevent or halt the violent or dangerous conduct. Therefore, for the same reasons we have determined that the eviction of Ms. Clinard under federally imposed lease terms was unwarranted, we likewise determine that it was also improper under the lease provision authorized by state law.

## II. Conclusion

We reverse the judgment of the trial court and remand this cause for such further proceedings as may be necessary. Costs are taxed to the appellee, Wessington House Apartments, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE