IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2013 Session

## ESTATE OF DAN STEPHEN PITSENBERGER v. DENNIS DEAN AND GLENDA DEAN

**Appeal from the Chancery Court for Sumner County**
**No. 2009C153      Tom E. Gray, Chancellor**

_____

### No. M2012-00659-COA-R3-CV - Filed April 30, 2013

_____

Executrix of an estate filed a complaint against the officers of a corporation in an effort to pierce the corporate veil and recover a debt she alleges is due from the corporation to the estate of her late husband. The trial court granted her motion for summary judgment and awarded her a $52,000 judgment. The individuals appealed, asserting genuine issues of material fact should have precluded the trial court's award. We conclude the trial court erred in awarding damages at the summary judgment stage because material facts are in dispute regarding whether a debt actually exists and regarding the amount of money that is at issue.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Trippe Steven Fried, New York, N.Y., for the appellants, Dennis Dean and Glenda Dean.

Keith Cameron Dennen and William Joseph Haynes, III, Nashville, Tennessee, for the appellee, Mary Kelly Pitsenberger, as Executrix of the Estate of Dan Stephen Pitsenberger.

### OPINION

This case concerns money that Dan Stephen Pitsenberger transferred in 2004 to World of Plastics, Inc. Mr. Pitsenberger passed away in 2009, and his wife, Mary Kelly Pitsenberger, was named the executrix of his estate. In her role as executrix, Mrs. Pitsenberger filed a complaint against the company and its principals, Dean and Glenda Dean, in an effort to

recover the funds her husband paid to the corporation.[1]  The parties filed motions for summary judgment, and the trial court granted the motion filed by Mrs. Pitsenberger.  The Deans appeal the trial court's judgment, and for the reasons set forth below, we affirm in part, reverse in part, and remand the case for further proceedings.

## I. BACKGROUND FACTS

Dennis Dean was the principal of a plastics company called World of Plastics, Inc. ("WOP").  Mr. Dean has been the President and controlling shareholder of WOP throughout the relevant time period and has been the sole shareholder since 2003 or 2004.  Mr. Dean's wife Glenda has been the company's secretary since sometime in 2004, and she and Mr. Dean have been the only members of WOP's board of directors since 2004 or 2005.

Sometime in 2004 a third party introduced Mr. Pitsenberger to Mr. Dean.  Mr. Pitsenberger expressed an interest in purchasing stock in WOP and began to take on the responsibilities of a chief financial officer or active controller for the company.  WOP was in financial distress when Mr. Pitsenberger began working there, and the parties agree that Mr. Pitsenberger advanced money to the company that was used to pay WOP's vendors and suppliers.

Mrs. Dean gave a deposition and testified that Mr. Pitsenberger transferred money to WOP to be used as "a prepayment to [a] stock purchase agreement."  She explained that the funds the company received from Mr. Pitsenberger were not considered as an accounts payable, but was "booked at the time as a capital contribution, as an investment."  Mr. Dean also gave a deposition, and he testified that Mr. Pitsenberger worked for WOP for about nine months, and then one day he said, "I can't do this, it's not going to work, I've got to go."  Mr. Dean testified that Mr. Pitsenberger then disappeared for about three years.

In March 2007 Mr. Pitsenberger's lawyer sent a letter to Mr. Dean demanding the repayment of $52,000 and enclosed a promissory note for Mr. Dean to sign.  Mr. Pitsenberger's lawyer recited the following:

> In March 2004, World of Plastics, Inc. (the "Company"), you, and Mr. Pitsenberger executed a Letter of Intent whereby Mr. Pitsenberger agreed to purchase shares of stock of the Company to give him an ownership position in the Company.  In return, Mr. Pitsenberger was to take certain actions for or on behalf of the Company, including making available cash to the Company in the

---

[1]Mrs. Pitsenberger subsequently dismissed the company as a party when she learned the company had filed for bankruptcy protection and proceeded against the Deans in their individual capacities.

amount of $100,000.

> While Mr. Pitsenberger's purchase of stock in the Company was not consummated, Mr. Pitsenberger did, in fact, advance to the Company the sum of $52,000. This money clearly was advanced to the Company in anticipation of the closing of the transaction. Since the transaction did not occur, the Company is indebted to Mr. Pitsenberger to repay the $52,000.

Mr. Dean's lawyer replied in May 2007:

> World of Plastics, Inc. will not be in a position to make any definitive proposal to Mr. Pitsenberger by May 4, 2007. The negotiations concerning a possible buy-out of my client are in the preliminary stages . . . .

> Please also note that World of Plastics does not agree with Mr. Pitsenberger's characterization of this transaction as an advance. In 2004, Mr. Pitsenberger remitted $45,000.00 to World of Plastics pursuant to a stock purchase agreement from which your client abruptly and without cause walked away. While World of Plastics is willing to work with Mr. Pitsenberger to resolve this matter, it cannot do so pursuant to arbitrary deadlines.

> It is in the best interests of all involved for Mr. Pitsenberger to give my client the time and flexibility that it needs to determine how the company will go forward. . . .

The Deans sold the assets of WOP to a third party in August 2007 and did not reimburse Mr. Pitsenberger for any part of the amount he was seeking.

Mr. Pitsenberger took no further action regarding the money, and he died in April 2009. Mrs. Pitsenberger was named the executrix of his estate. Mrs. Pitsenberger filed a complaint shortly thereafter against World of Plastics and against Mr. and Mrs. Dean individually on behalf of her husband's estate in an effort to collect this debt. When she learned that the company had filed for bankruptcy protection in December 2007, Mrs. Pitsenberger dismissed WOP from her complaint.[2]

In her complaint Mrs. Pitsenberger alleged Mr. Pitsenberger made loans to the defendants in the total amount of $52,000 that were payable upon demand. Mrs. Pitsenberger sought to pierce the corporate veil to hold Mr. and Mrs. Dean personally liable for this debt

---

[2]Unbeknownst to Mrs. Pitsenberger when she filed the complaint in 2009, World of Plastics had changed its name in August 2007 to Dean Enterprises, Inc. The entity that filed for bankruptcy protection in December was Dean Enterprises, Inc., not World of Plastics.

she claims is due the estate. Mrs. Pitsenberger's causes of action against the Deans included breach of loan agreement, fraudulent conveyance, and breach of fiduciary duty.

The Deans denied Mr. Pitsenberger loaned them $52,000 and denied all relevant and material allegations Mrs. Pitsenberger asserted against them regarding their liability.

## II. Trial Court's Order

The parties filed motions for summary judgment, and following a hearing the trial court granted Mrs. Pitsenberger's motion and denied the Deans' motion. The trial court found the following facts, *inter alia*, were undisputed:

> 3. The Deans, as the officers and sole directors of the Corporation, failed to maintain records or observe corporate formalities after Mr. Dean once again became sole stockholder in the Corporation.
>
> 4. In 2004, the Decedent made loans totaling $52,000. The Corporation never repaid this indebtedness.
>
> . . . . .
>
> 10. To ensure that the Corporation's cash was used only to pay creditors beneficial to the Deans or Mr. Dean's new employer, KDM, the Deans transferred the Corporation's available cash from the Corporation's account to the Deans' personal checking account. Between January 1, 2007 and December 30, 2007, the Corporation transferred over $175,553.68 to the Deans. Of this amount, the Deans retained $97,553.68.
>
> 11. The Deans also used the Corporation's funds to pay credit card debt on Mr. Dean's personal credit card of $247,500.02 and on Mrs. Dean's personal credit card of $18,598.63 between January 1, 2007 and December 30, 2007. The total amount the Corporation paid directly to the Deans, or to creditors of the Deans, in the twelve (12) months prior to the filing of the Chapter 7 Petition, was over $477,000.00.
>
> . . . . .
>
> Based upon these facts, the Court concludes that the Corporation was indebted to the Decedent in the amount of $52,000.00, and the Corporation's separate identity should be disregarded or "pierced," as the undisputed evidence shows that the Corporation was a sham or a dummy and action is "*necessary to*

*accomplish justice*."

The trial court entered judgment against the Deans, jointly and separately, in the amount of $52,000 together with pre-judgment and post judgment interest and court costs.

The Deans appealed the trial court's judgment, arguing the trial court erred in granting Mrs. Pitsenberger's motion for summary judgment because there are genuine issues of material fact. First, the Deans contend Mr. Pitsenberger paid WOP $45,000, not $52,000 as Mrs. Pitsenberger claims and as the trial court found. Second, the Deans contend this money did not constitute a loan, but was part of a stock purchase that was never fully consummated.[3]

### III. ANALYSIS

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). "When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact." *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993); *see Martin*, 271 S.W.3d at 84 (same); *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (same).

The evidence presented at the summary judgment stage must be considered in the light most favorable to the non-moving party, and the non-moving party must be afforded all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). "Summary judgment is appropriate only when the facts and inferences permit a reasonable person to reach only one

---

[3]The trial court's judgment against the Deans individually was based on its conclusion that the corporate veil of WOP should be pierced. The Deans do not argue the trial court erred by piercing the corporate veil or question the court's findings on this issue.

conclusion." *Doe*, 46 S.W.3d at 196 (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

The Deans argue, and we agree, that there are genuine issues of material fact concerning the amount of money Mr. Pitsenberger transferred to WOP and the terms under which this money was transferred. Mrs. Pitsenberger alleges, and the trial court found, that Mr. Pitsenberger paid WOP $52,000.[4] The Deans acknowledge Mr. Pitsenberger transferred $45,000 to WOP, but they deny that the amount was $52,000. Thus, there is a dispute on this issue.

Further, there is a genuine issue of material fact concerning the terms under which the money Mr. Pitsenberger transferred to WOP was to be paid back, or even if it was supposed to be paid back. Mrs. Pitsenberger characterizes the transfer as a "loan" in her complaint, but in the demand letter dated March 2007 Mr. Pitsenberger's lawyer characterized the transfer as an "advance" made in anticipation of closing a stock transaction.

The Deans have consistently denied that the money Mr. Pitsenberger transferred to WOP was a "loan." Instead, they contend the money was a prepayment for stock. Mr. Pitsenberger's lawyer had that impression when he wrote the demand letter. Mrs. Dean testified that she booked the transfer from Mr. Pitsenberger as a capital contribution, not as a loan or as an accounts payable item. Everyone agrees no stock was ever issued to Mr. Pitsenberger, and the Deans assert it is because Mr. Pitsenberger disappeared for a few years. There is no written evidence of the arrangements the parties may have made when the money was transferred.

As the moving party, Mrs. Pitsenberger has the burden of proving she is entitled to judgment as a matter of law and that there are no material facts in dispute. She has failed to meet that burden on the issue of liability and damages. We therefore reverse the trial court's judgment against the Deans and remand this case for further proceedings.

## IV. CONCLUSION

We reverse the trial court's judgment on the issues of liability and damages. This case is remanded to the trial court for further proceedings. Costs of this appeal shall be taxed to Mary Kelly Pitsenberger, for which execution shall issue if necessary.

---

[4]Mrs. Pitsenberger cites to a paragraph of the Deans' Answer in support of her claim that the amount of the advance is undisputed. However, when the Deans' Answer is matched up with Mrs. Pitsenberger's Amended Complaint (as opposed to her initial Complaint), it becomes clear that the Deans have in fact not admitted that Mr. Pitsenberger transferred $52,000 to WOP. The Deans have denied throughout the litigation that Mr. Pitsenberger ever advanced $52,000 to WOP.

_____
PATRICIA J. COTTRELL, JUDGE